UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **TERRIKA EVERETT, o/b/o R.D.D., JR.** | * | **CIVIL ACTION NO. 13-2541** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **CAROLYN W. COLVIN, ACTING COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

### REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner of Social Security's denial of disability insurance benefits. The appeal was referred to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **REVERSED and REMANDED for further proceedings.**

### Background

On April 11, 2011, Terrika Everett protectively filed the instant application for Supplemental Security Income (SSI) benefits on behalf of her minor child, R.D.D., Jr. ("R.D.D.") (claimant), who was born in August 2004. (Tr. 97-101, 109).[1] Everett alleged that R.D.D. has been disabled since October 10, 2004, because of severe asthma, eczema, respiratory

---

[1] The court refers to the minor by his initials in accordance with LR 5.82W and the E-Government Act of 2002.

infection, and shortness of breath. (Tr. 109, 112).[1] The claim was denied at the initial stage of the administrative process. (Tr. 52-63). Accordingly, Everett requested, and received a December 5, 2011, hearing before an Administrative Law Judge ("ALJ"). (Tr. 36-51). By decision dated January 18, 2012, the ALJ determined that the claimant was not disabled under the Act. (Tr. 19-32).

Everett appealed the adverse decision to the Appeals Council, but the request was denied initially on November 16, 2012. (Tr. 13-16). However, in response to a November 27, 2012, letter from plaintiff's recently retained counsel enclosing additional evidence, the Appeals Council agreed to revisit the matter, and on April 19, 2013, notified plaintiff that it intended to issue a decision finding R.D.D. disabled for the period from August 1, 2010 through November 18, 2011. (Tr. 90-94). Outside of the foregoing span, however, the Appeals Council explained that it intended to find R.D.D. not disabled. *Id* The Council afforded Everett and her representative 30 days to submit any additional evidence or statement. *Id*.

On June 24, 2013, the Appeals Council acted upon its stated intentions, and issued a partially favorable decision, finding R.D.D. disabled for a closed period from August 1, 2010, through November 18, 2011. (Tr. 1-10).[2] However, beginning on November 18, 2011, the Appeals Council determined that R.D.D. experienced medical improvement such that he no

---

[1] Everett filed a prior application for Supplemental Security Income on September 8, 2010, that was denied initially on January 12, 2011. (Tr. 5, 110). In its resolution of the instant, April 11, 2011, application, the Appeals Council reopened Everett's prior application. (Tr. 5).

[2] Specifically, the Council found that he suffered severe impairments of asthma and eczema that medically equaled the criteria listed in 20 C.F.R. Pt. 404, Subpt. P, Appx. 1, Listing 103.03C2. (Tr.9).

longer was disabled. *Id*. The Appeals Council's decision became the final decision of the Commissioner. (Tr. 1).

On August 26, 2013, Everett sought review before this court. She alleges the following errors:

1) the Appeals Council's finding that R.D.D.'s asthma experienced medical improvement as of November 18, 2011, is not supported by substantial evidence; and

2) the Appeals Council committed reversible error in adopting the ALJ's "statements concerning the subjective complaints," as the ALJ failed to provide specific reasons for his credibility finding.

## Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson*, 402 U.S. at 401. While substantial evidence lies somewhere between a scintilla and a preponderance, it contemplates "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Conversely, a finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination. *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir.

1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Law

On August 22, 1996, Congress passed the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub.L. 104-193, 110 Stat. 2105, which amended 42 U.S.C. §1382c(a)(3). Pursuant to this law, a child under the age of eighteen is considered disabled for purposes of SSI benefits if "that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 1382c(a)(3)(C)(I) (1997).

The regulations set forth a three-step process for a child seeking benefits. First, the ALJ must determine if the child is engaged in substantial gainful activity. 20 C.F.R. § 416.924. If the child is not so engaged, then the ALJ determines whether the child has a medically determinable impairment(s) that is severe. *Id*. An impairment(s) will not be deemed severe if it constitutes a "slight abnormality or a combination of slight abnormalities that causes no more than minimal functional limitations." *Id*. Finally, an impairment(s) that is severe also must meet, medically equal, or functionally equal a listed impairment. *Id*.

The Listing of Impairments describes impairments for each major body system that cause marked and severe functional limitations. 20 C.F.R. § 416.925(a). An impairment(s) meets a listing when it satisfies all of the criteria of that listing, including any relevant criteria in the introduction, and meets the duration requirement. 20 C.F.R. § 416.925(c)(3).

If an impairment(s) does not meet all of the criteria of a listing, it still can medically equal the criteria of a listing when the claimant has other findings related to the impairment(s) that are at least of equal medical significance to the required criteria.  *See* 20 C.F.R. §§ 416.925(c)(5) & 926(b).  Medical equivalence may be appropriate in circumstances where the claimant:  1) has an impairment described in the Listing of Impairments, but a) does not exhibit one or more of the findings of the specified listing, or b) exhibits all of the findings, but one or more of the findings is not as severe as specified by the listing; 2) has an impairment(s) that is not described in the Listing of Impairments; or 3) has a combination of impairments none of which meets a listing in the Listing of Impairments.  20 C.F.R. § 416.926(b).

If the claimant has a severe impairment(s) that does not meet or medically equal any listing, the Commissioner will decide whether it causes limitations that functionally equal a listing(s).  20 C.F.R. § 416.926a(a).  Under the regulations, the Commissioner considers the claimant's functional activities in terms of six domains:  (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for oneself, and (6) health and physical well-being.  20 C.F.R. § 416.926a(b)(1).  An impairment is deemed functionally equivalent to a listed impairment if it results in an extreme limitation in one domain of functioning or marked limitations in two domains.  20 C.F.R. § 416.926a(a).  When assessing functional limitations, the Commissioner considers all relevant factors including, but not limited to:

1)   How well [the claimant] can initiate and sustain activities, how much extra help [the claimant] need[s], and the effects of structured or supportive settings;

2)   How [the claimant] function[s] in school; and

      3)     The effects of [the claimant's] medications or other treatment.
20 C.F.R. § 416.926a(a) (internal citations omitted).

An "extreme" limitation is assessed when the impairment(s) interferes very seriously with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. §416.926a(e)(3). Day-to-day functioning may be seriously limited when the impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. *Id*. An "extreme" limitation is equivalent to standardized test scores that are at least three standard deviations below the mean. *Id*. "Extreme" limitation, however, does not necessarily mean a complete lack or loss of ability to function. *Id*.

The term "marked" may be established when a claimant's impairments seriously interfere with the claimant's ability to independently initiate, sustain, or complete activities. 20 C.F.R. § 416.926a(e)(2). "Marked" limitation also refers to a limitation that is more than "moderate," but "less than extreme." *Id*. A "marked" limitation is equivalent to standardized test scores that are at least two, but less than three standard deviations below the mean. *Id*.

## Discussion

**I.     The Appeals Council's Finding that R.D.D.'s Asthma Experienced Medical Improvement as of November 18, 2011, is Not Supported by Substantial Evidence**

As recited above, the Appeals Council awarded benefits to R.D.D. for a closed period of disability.[3] In a closed period of disability case, the Commissioner must apply the medical

---

[3] "In a 'closed period' case, the decision maker determines that a new applicant for disability benefits was disabled for a finite period of time which started and stopped prior to the date of his decision. Typically, both the disability decision and the cessation decision are rendered in the same document." *Pickett v. Bowen*, 833 F.2d 288, 289 n1 (11th Cir. 1987).

improvement standard to determine whether or when the disability ended. *Waters v. Barnhart*, 276 F.3d 716, 719 (5th Cir. 2002). Thus, the burden rests with the government to show that the claimant's disability ended as of the cessation date. *Joseph v. Astrue*, 231 Fed. Appx. 327, 329 (5th Cir. 2007) (unpubl.) (citing *Waters, supra*).

In childhood disability cases, the Commissioner follows a three-step sequence to determine whether the claimant has experienced medical improvement. 20 C.F.R. § 416.994a(b). First, the Commissioner must determine whether there has been medical improvement in the claimant's condition. 20 C.F.R. § 416.994a(b)(1).[4] Second, if there has been medical improvement, the Commissioner must determine whether the impairment(s) still meets or equals the severity of the listed impairments that it met or equaled at the time of the most recent favorable determination. 20 C.F.R. § 416.994a(b)(2). Finally, if there has been medical improvement, the Commissioner must determine whether the claimant is currently disabled upon consideration of all impairments (including any new ones) to determine if they are severe and whether they meet, medically equal, or functionally equal a listing(s). 20 C.F.R. § 416.994a(b)(3).

In this case, the Appeals Council relied on an opinion from medical expert, Judson Force, M.D., to find that from August 1, 2010, through November 18, 2011, R.D.D.'s impairments medically equaled listing 103.03C2, because from March 2010 through September 2011, R.D.D. experienced asthma exacerbations that required short 5-day courses of oral steroids on eight

---

[4] The regulations define "medical improvement as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled. . . ." 20 C.F.R. § 416.994a(c).

different occasions.  In other words, despite not undergoing short courses of cortocosteroids that averaged more than five days per month for three months during a twelve month period to meet the listing, the Appeals Council determined that R.D.D.'s asthma medically equaled listing 103.03C2 during the closed period because he experienced eight exacerbations over a nineteen month period.

As of November 18, 2011, however, the Appeals Council determined that R.D.D. experienced medical improvement such that his impairment no longer medically equaled listing 103.03C2 because he experienced improved control of his asthma, and no longer required frequent short courses of oral steroids.  (Tr. 6-7).

Plaintiff contends that the Appeals Council's rationale is unsound because the record is replete with post-November 2011 asthma exacerbations.  In support, she cites *three* instances in 2012 where R.D.D. had to receive a short course steroid treatment for exacerbation.  *See* Tr. 289-290, 262, 296-297).  The Commissioner contends that because R.D.D. suffered only three exacerbations during this period, this necessarily supports the Appeals Council's determination that his asthma had improved, and that he no longer medically equaled listing 103.03C2.

If, as suggested by the parties, R.D.D. required but three short course steroid treatments that did not average more than five days in a 12 month period, then the court would tend to agree that this supports a finding that his condition had improved.  However, R.D.D.'s pharmacy records reveal that he was prescribed short course steroid treatments on *eight* occasions in a thirteen month period between November 2011 and December 2012:

| Medication | Date | Physician | Supply |
|---|---|---|---|
| Veripred Oral | November 22, 2011 | Malik | 5 or 6 days |
| Veripred Oral | January 9, 2012 | Malik | 5 days |
| Prednisolone | February 1, 2012 | Pepiak | 5 days |
| Orapred Odt Tab | March 16, 2012 | Trejo | 5 days |
| Prednisolone | June 7, 2012 | Pepiak | 7 days |
| Prednisolone | August 1, 2012 | Malik | 5 days |
| Orapred Odt Tab | September 12, 2012 | Oyefara | 7 days |
| Veripred Oral | December 14, 2012 | Malik | 5 days |

(Tr. 27, 307).

In other words, rather than decreasing, the frequency of R.D.D.'s short course steroid treatments actually *increased* after November 18, 2011. Thus, if, as the Appeals Council found, the frequency of R.D.D.'s short course steroid treatments warranted a finding that his impairment medically equaled listing 103.3C2 *prior to* November 18, 2011, then the *even greater* frequency of short course treatments post-November 18, 2011, should mandate the same conclusion – at least through December 2012.[5] Stated differently, the basis for the Appeals Council's finding

---

[5] Both Dr. Malik's May 1, 2013 treatment note and Dr. Pepiak's May 31, 2013, letter contain references to additional asthma exacerbations suffered by R.D.D. in 2013. *See* Tr. 309-312, 314-117. However, the 2013 pharmacy records, the alleged emergency room visits, and Dr. Oyefara's treatment notes are not in the record. Also, Dr. Pepiak's treatment notes from February and June 2012 are absent. This evidence may be developed further upon remand.

The court also observes that by May 31, 2013, Dr. Pepiak appears to have endorsed daily maintenance steroids for prevention of exacerbations. *See* Tr. 314-317. Upon remand, the Commissioner may address whether a maintenance course of steroids is equivalent to multiple short courses as contemplated by listing 103.03C2. *See Shattles v. Astrue*, Civ. Action No. 09-0761, 2010 WL 3801307 (W.D. La. Aug. 23, 2010) *report and recommendation adopted as modified,* 2010 WL 3883888 (W.D. La. Sept. 27, 2010) (distinguishing between short term use of quick relief steroids to treat asthma attacks, versus long-term use of low dose steroids to prevent asthma attacks).

9

that R.D.D. experienced medical improvement as of November 18, 2011, is not supported by the record.

## II.    Reversal and Remand

Because the foundation for the Commissioner's determination that the claimant experienced medical improvement is not supported by substantial evidence, the court further finds that the Commissioner's ultimate conclusion that the claimant's disability ended as of November 18, 2011, also is not supported by substantial evidence.[6]

Plaintiff urges the court to enter a judgment reinstating benefits. The courts have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. §405(g). When reversal is warranted, the matter is remanded with instructions to make an award only if the record enables the court to conclusively determine that the claimant is entitled to benefits. *See Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir. 1985); *see also Rini v. Harris*, 615 F.2d 625, 627 (5th Cir.1980) (reversing and remanding with direction to enter judgment where the evidence was not substantial and the record clearly showed the claimant's right to benefits).

The instant record is not so disposed. Many treatment records are missing, and there remain questions concerning plaintiff's compliance with the prescribed treatment regimen. *See e.g.*, Tr. 314-317, 249-253.

## Conclusion

---

[6] Accordingly, the court need not reach plaintiff's remaining assignment(s) of error.

For the above-stated reasons,

**IT IS RECOMMENDED** that the Commissioner's decision be **REVERSED** and **REMANDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings consistent herewith.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 21st day of July, 2014.

_____
KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE